In re NEW.

(District Court, N. D. Ohio, E. D.    June 2, 1902.)

1. BANKRUPTCY—PROOF OF CLAIM BY SURETY WHO HAS PAID DEBT—SURREN-
   DER OF PREFERENCES.

A surety who has paid the debt of his principal after ·the latter's
bankruptcy is not required to surrender preferential payments received
by the creditor as a condition to the proving of his claim which arises
from the payment made by him, and not through subrogation. The
provision of Bankr. Act 1898, § 57i, that when a surety pays the debt of
a bankrupt, in whole or in part, he "shall be subrogated to that extent
to the rights of the creditor," has reference to any security held by the
creditor, and is not intended as a restriction upon the surety creditor.

In Bankruptcy.    On certificate from referee.

James P. Wilson, for bankrupt.
Arel, McVey & Robinson, for A. J. Heineman.
Livingstone & Livingstone, for M. Livingstone, Sr.

WING, District Judge.    The certified report of the referee shows
that the bankrupt, Joseph New, was indebted to the Mahoning Na-
tional Bank, of Youngstown, Ohio, upon six notes, dated May 20,
1901, upon which A. J. Heineman, Isaac New, and Joseph Newgass
were sureties.    The bankrupt was also indebted to the same bank on
another set of notes, upon which Heineman was sole surety.    Prefer-
ential payments had been made by the bankrupt to the bank upon
the first series of notes mentioned, in the amount of two of such notes.
A preferential payment had been made by the bankrupt to the bank
on the second series of notes mentioned, in the sum of $600.    The
bank omitted to prove any claim against the bankrupt founded upon
either series of notes.    Heineman, after the adjudication in bankruptcy,
as surety, paid to the bank the aggregate balance due upon the last ·
series of notes mentioned, to wit, the sum of $7,600.    He seeks to
prove a claim against the estate of the bankrupt in that amount.
Under an expression of the referee that it was necessary, in order
to entitle him to prove his claim, he surrendered $600, the amount
of the claimed preferential payment ·to the bank on the notes on
which he was sole surety.    Heineman afterwards filed his petition
for the return of this $600, under the claim that he should be required
to make no surrender.    The prayer of his petition is denied by the
referee.

The trustee of the estate of the bankrupt objected to the proving
of the claim of Heineman in the amount of $7,600, because Heine-
man had not been required, as a prerequisite to the filing of his claim,
to surrender all preferential payments made by the bankrupt to the
bank, not only on account of the series of notes on which Heineman
was sole surety, but also on the series of notes upon which he was
joint surety with two others.

It is first important to ascertain whether or not Heineman should
have been required to make any restoration of payments made by
the bankrupt to the bank as a condition of filing his claim.    The solu-
tion of this question necessitates a short analysis of the nature of
Heineman's claim against the bankrupt and his estate.    It has now

become well-settled law that the claim of a surety against his principal, by reason of having paid the debt of the principal, is one founded upon an implied contract of the principal to reimburse the surety. In Ohio this doctrine is announced in Williams' Adm'rs v. Williams' Adm'rs, 5 Ohio, 444. In that case it was held that the statute of limitations applicable to the claim of a surety against his principal was not the statute which would apply to the debt of the principal to the payee of the instrument upon which the indorser was surety. It has been held generally that the right of the surety to recover from the principal debtor is not founded upon any doctrine of subrogation; that the indebtedness is created by the surety making payment, and has no existence prior to such fact. The doctrine of subrogation, as applied to the relation of principal and surety, is only invoked for the purpose of giving to the surety any and all rights of the payee of the obligation to any security he may hold for the payment of the original debt.

Section 57i of the bankrupt act provides that, "whenever a creditor whose claim against the bankrupt's estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name; and, if he discharge such undertaking in whole or in part, he shall be subrogated, to that extent, to the rights of the creditor." It is contemplated by the bankrupt act that every bona fide creditor may prove his claim, and he is required, in making proof of such claim, to set forth the claim, the consideration therefor, and what securities are held therefor, if any. A surety who has not yet paid the debt of his principal is not a creditor of the estate, but by the subsection referred to, without making payment, he is permitted to prove the claim with respect to which he is surety in the name of the creditor who shall omit to prove it. Heineman, in this case, has not attempted to prove the claim of the bank, nor has he in any way attempted to take advantage of the privilege given by the subsection referred to. The latter part of the subsection, which provides as follows: "And if he discharge such undertaking in whole or in part, he shall be subrogated, to that extent, to the rights of the creditor,"—is not intended as a restriction upon the surety creditor. It is intended to permit 'a surety, who has paid the debt of his principal, to be subrogated to any peculiar rights with respect to security which the payee may hold against the bankrupt. If the bank had held security collateral to the notes of the bankrupt upon which Heineman was surety, Heineman, by virtue of the section referred to and of the general law, would have had a right to be subrogated to the bank's rights, and to have transferred to him whatever securities the bank may have held. It does not appear that the bank held any securities.

It is plain that the claim of Heineman is not founded upon any claim of the bank transferred to him by way of subrogation. His claim is in assumpsit, for money paid to the use of another, and the law implies a request to make such payment, and also a promise to repay it; and this implied promise was, under the common law, enforceable by the surety by action of assumpsit. The indebtedness

of the bankrupt to Heineman had no existence until Heineman paid the balance due upon the notes upon which he was surety. Nothing has ever been paid to him on account of this indebtedness, and there is nothing for him to restore to the bankrupt's estate.

It is stated in the report of the referee as follows:

"No formal order was entered requiring Mr. Heineman to make the surrender, but it was made after numerous conferences between his attorney. the trustee, and the referee, in which the referee stated his view of the law and the position he took in the matter. This surrender of $600 is now in the hands of the referee, subject, of course, to be refunded, in case it shall be held that the claims cannot be allowed."

It does not appear that there has been such voluntary payment of the $600 by Heineman that he should be barred or estopped from asserting his right to it. The referee has held that Heineman should not be required to surrender to the trustee the preferential payments made by the bankrupt upon the series of notes upon which Heineman was surety with two others. In that holding the referee is sustained. The holding of the referee which denied to Heineman the right to prove his claim in the amount of his payment to the bank, on account of his obligation as surety, without first making restitution of $600, is overruled, and it is ordered that the referee return the $600 to Heineman, and allow his claim in the amount of $7,600, as of January 23, 1902.